IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


**BELINDA OATES,**

       Plaintiff,

vs.                                                              Civ. No. 07-1280 ACT

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

       Defendant.


**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing filed December 11, 2008. Docket No. 21. The Commissioner of Social Security issued a final decision denying benefits finding that Plaintiff was not disabled. Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Court finds that the motion is well-taken and will be granted.

**I.  PROCEDURAL RECORD**

      Plaintiff, Belinda Oates, filed an application for Disability Insurance Benefits and Supplemental Security Income on May 16, 2005. Tr. 52-54, 437-39. She alleged a disability since July 10, 2004, due to depression and bipolar disorder. Tr. 59. Her application was denied at the initial and reconsideration level. Tr. 34, 35.

      The ALJ conducted a hearing on April 3, 2007. Tr. 467-525. At the hearing, Plaintiff was represented by counsel. On July 27, 2007, the ALJ issued an unfavorable decision finding that

Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work.  Tr. 20.

The Appeals Council issued its decision denying Plaintiff's request for review and upholding the final decision of the ALJ.  Tr. 4.  The Plaintiff subsequently filed her Complaint for judicial review of the ALJ's decision on December 20, 2007.

Plaintiff was born on November 28, 1963.  Tr. 60.  She has a high school degree and some college.  Tr. 475.  Plaintiff's past relevant work is as a cashier, front-desk clerk, and customer service representative.  Tr. 23.

## II.  STANDARD OF REVIEW

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards.  *See Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993)(quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (citation omitted)).  A decision of an ALJ is not supported by substantial evidence if other evidence in the record overwhelms the evidence supporting the decision.  *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity.  *See* 42 U.S.C. §423(d)(1)(A); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  20 C.F.R. § 404.1520(a-f).  The

sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *See Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show: 1) she is not engaged in substantial gainful employment; 2) she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities; 3) her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1; or 4) she is unable to perform work she had done in the past.  20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

### III.  MEDICAL HISTORY

Plaintiff was treated by Dr. Walter Winslow, a psychiatrist at St. Martin's from February 2003 to August 2004 and from April 2005 to April 2006.  His diagnoses included major depression, dysthymia, and obesity.  He evaluated Plaintiff's level of functioning during this time with Global Assessment of Functioning ("GAF") ratings from 48 to 55.[1]  Dr. Winslow treated Plaintiff's depression with Zoloft and Trazodone.[2]

---

[1] The GAF is a subjective determination based on a scale of 1-100 of "the clinician's judgment of the individual's overall level of functioning." Diagnostic & Statistical Manual of Mental Disorders, 4th ed. (1994) ("DSM-IV"), p.32. Individuals with a GAF between 41 and 50 experience serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairments in social, occupational, or school functioning. *Id.*

[2] Zoloft and Trazodone are antidepressant medications used to treat a variety of conditions, including depression and other mental/mood disorders. They can help prevent suicidal thoughts/attempts and provide other important benefits. *www.webmd.com* .

On March 11, 2003, Plaintiff was admitted to Presbyterian Kaseman Hospital because of alcohol problems with reports that she had tried to cut herself and was depressed. Dr. Renee Gonzales performed a psychiatric evaluation and diagnosed Plaintiff with depressive disorder and alcohol dependence. Dr. Gonzales rated Plaintiff's GAF at 24, reporting that it had been at 60 during the past year.[3]  Tr. 228-29.

In July of 2004, Plaintiff was seen by Dr. Janice Penn, a psychologist. She evaluated Plaintiff with a GAF of 30-35.[4]  She diagnosed Plaintiff with bipolar disorder and prescribed Lithium. Dr. Penn treated Plaintiff until April of 2005.

On June 13, 2005, Plaintiff was admitted to Presbyterian Kaseman Hospital after a suicide attempt. She ingested 30 tablets of Trazodone while intoxicated. Tr. 224. She had recently lost custody of her son. She was diagnosed with alcohol withdrawal, alcohol dependence and alcohol induced mood disorder. She had a GAF of 35. Tr. 224-25.

Plaintiff was also treated at the UNM Psychiatric Center from September of 2005 to November of 2006. Tr. 320-356. She was referred to UNM by her health care providers at St. Martins due to "funding" issues. Tr. 338. She was diagnosed with alcohol dependence, early full remission and depression. Tr. 342. She was treated by Dr. Paula Hensley on August 19, 2005, August 4, 2006, August 11, 2006, September 21, 2006, and her treatment was discussed by an attending with Dr. Hensley on November 2, 2005, and December 22, 2005. Tr. 321, 323, 331, 336,

---

[3] A GAF of 24 indicates behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment and a GAF of 60 indicates moderate symptoms or moderate difficulty in social, occupation or school functions. *DSM-IV* at 32.

[4] A GAF of 30-35 indicates some impairment in reality testing or communication with major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. *Id.*

337, 338-42.  Dr. Hensley also participated in Plaintiff's Multidisciplinary Treatment Plan Review on February 16, 2006, and August 14, 2006.  Tr. 322, 335.

In August of 2006, Plaintiff was taken to the UNM psychiatric emergency room.  Tr. 324-25.  She told her boyfriend that she was going to kill herself.  Tr. 326-30.

In October 2006, Plaintiff's treatment was transferred to Dr. Claire Smith, a psychiatrist at the Counseling and Psychotherapy Institute.  Dr. Smith diagnosed Plaintiff with chronic depression and alcohol dependence.  Tr. 308.

## IV. DISCUSSION

Plaintiff asserts that the ALJ erred at step three in not finding that she met the Listing of Impairments ("Listings") §§12.04, Affective Disorder and 12.06, Anxiety Related Disorders.  The Listings describes impairments that are considered severe enough to prevent a person from performing any gainful activity. 20 C.F.R. §§ 404.1525(A), 416.925(A). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). When a claimant for disability benefits presents evidence of a mental impairment, the Commissioner must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a and the Listings. *Cruse v. United States Dept. of Health & Human Serv.*, 49 F.3d 616-17 (10th Cir. 1995).  This procedure involves two parts.  Under Part A, the Commissioner determines "whether certain medical findings which have been found especially relevant to the ability to work are present or absent."  20 C.F.R. § 404.1520a(b)(2).  Under Part B, the Commissioner "rate[s] the degree of functional loss resulting from the impairment(s)."  *Id.* § 404.1520a(b)(3).  The Listings subsections applying to mental

disorders provide enumerated criteria that guide the Commissioner through Parts A, B and C for a given disorder. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.02-12-08.

At step three, the ALJ evaluated Plaintiff under Listings 12.04, Affective Disorders, and 12.09, Substance Addiction Disorders.

Step 3, B criteria.

The ALJ evaluated Listing 12.04, Affective Disorders, under the B criteria. Thus, the Court assumes that the ALJ found that Plaintiff met the A criteria under 12.04.[5]

Pursuant to the B criteria, the claimant's mental impairment must result in at least two of the following to meet the required degree of functional loss:

   1. Marked restriction of activities of daily living; or
   2. Marked difficulties in maintaining social functioning; or
   3. Marked difficulties in maintaining concentration, persistence, or pace; or
   4. Repeated episodes of decompensation, each of extended duration [.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.04(b).

The ALJ appeared to rely on, though not totally adopt, the findings of the state agency psychologist, Dr. J. LeRoy Gabaldon, who reviewed the medical records and prepared the Psychiatric Review Technique Form ("PRTF") on July 8, 2005. The PRTF is a standard document ... "that tracks the listing requirements and evaluates the claimant under the Part A and B criteria." §416.920a(e); *Wright v. Barnhart,* 284 F.Supp.2d 1277 (D. Kan., 2003). Dr. Gabaldon found that Plaintiff had mild degrees of limitation in the first three categories and no episodes of

---

[5] Plaintiff's treating physicians found that Plaintiff met the A criteria for Listing 2.04, Affective Disorders. Tr. 193-94, 269 and 288.

decompensation. Tr. 250. The ALJ also, in conclusory fashion, found that Plaintiff's limitations did not meet the C criteria.[6]

>At step three the ALJ wrote:
>
>The State agency found that in activities of daily living, the claimant has mild restriction. Ms. Oates testified that she lived alone, watched a lot of television, prepared simple meals, cleaned house and did the grocery shopping about once a month. The claimant does not have a drivers license due to a DUI.
>
>The State agency found in social functioning, the claimant had mild difficulties. The undersigned finds that the claimant is moderately limited. As noted above, the claimant lives alone and doesn't socialize very much. Ms. Oates states she doesn't leave her apartment unless she has an appointment.
>
>The State agency found with regard to concentration, persistence or pace, the claimant has mild difficulties. The undersigned finds moderate limitations. The claimant was a student at junior college as recently as October 2006. The claimant testified to forgetfulness and memory problems but none of those difficulties were noted in treatment notes from her providers.
>
>As for episodes of decompensation, [T]he State agency found the claimant has experienced no episodes of decompensation. The Claimant has had several hospitalization for alcohol abuse and depression.
>
>Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria are not satisfied.

T. 18.

---

[6] The C criteria under Listing 12.04 is: "Medically documented history of a chronic affective disorder for at least 2 years duration that has caused more than minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
 1. Repeated episodes of decompensation, each of extended duration; or
 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.
20 C.F.R. Pt. 404, Subpt. P, App.1, 12.04C.

The ALJ made several legal errors with respect to the evidence at step three. He did not discuss evidence he accepted or rejected with respect to the requirements of the Listings. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The ALJ is charged with carefully considering all the relevant evidence and linking his findings to specific evidence. *Id.* (holding that the "record must demonstrate that the ALJ considered all the evidence," and the ALJ must "discuss[] the evidence supporting his decision,...the uncontroverted evidence he chooses not to rely upon, [and] significantly probative evidence he rejects"). For the first three limitations, the ALJ appears to rely only on Plaintiff's testimony. He fails to mention evidence that Plaintiff was homeless at times; lived with a boyfriend at times; or the number of jobs she has had. As to the fourth limitation, the ALJ makes no finding other than there were no "repeated episodes of decompensation." He failed to discuss why Plaintiff's hospitalizations were not episodes of decompensation.

Second, the ALJ failed in explaining the specific weight he gave to the non-examining physician. If the ALJ does not give controlling weight to a treating physician's opinion, as in this case, the ALJ must explain the weight given to the opinion of the State agency non-examining physician. 20 C.F.R. §§ 1527(f)(2)(ii), 416927(f)(2)(ii); *Hamlin v. Barnhart*, 365 F.3d 1208, 1223 (10th Cir. 2004) (If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.) It is simply not clear in the ALJ's decision as to what medical opinions he relied on in support of his determination at step three.

Third, it appears that the ALJ did rely to some extent on the opinion of the State agency physician. Any reliance would be err. The State agency physician completed the PRTF on July 5, 2005. Tr. 240-52. However, the relevant period is from July 10, 2004, through July 27, 2007. [Response, Doc. 22 at 1.] Thus, the State agency physician completed the PRTF without reviewing the following medical records in the record:

1.      Medical records from St. Martin's from at least July 5, 2006 to April 10, 2006.
2.      Dr. Smith's records from the Counseling and Psychotherapy Institute from October 3, 2006 to December 7, 2006.
3.      Medical records from the UNM Psychiatric Center from November 11, 2005 to November 2, 2006.

In addition, it would be error to rely solely, as it appears here, on the State agency physician's opinion even if he had reviewed all the relevant medical evidence because the Tenth Circuit has held that "'boxes checked on an evaluation form by a nontreating physician,'standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence.'" *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987).

Treating physicians.

At step four the ALJ discussed Plaintiff's "three treating source statements." Tr. 21.[7] Under the treating physician rule, the Commissioner generally gives more weight to treating physician's opinions than to non-treating physician's opinions. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). The ALJ must first determine whether a treating physician's opinion qualifies for "controlling weight." *Langley*, 373 F.3d at 1119 (*citing Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) consistent with other substantial evidence in the record." "[I]f the opinion is deficient in either of these respect, then it is not entitled to controlling weight." *Watkins*, 350 F.3d at 1300 (internal citations omitted). Even if the ALJ determines that a treating physician's opinions are not entitled to "controlling weight" the treating

---

[7]This analysis should have been done at step three; however, as the ALJ did the analysis, this error is harmless.

source medical opinions are still entitled to deference and must be weighed using all the factors provided in 20 C.F.R. §404.1527. Id. (Internal citation omitted). Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1301.

After the ALJ considers these factors, he must give good reasons in the written decision for the weight ultimately assigned to the treating doctor's opinions. *Id*. If the ALJ rejects the opinions completely, he must give specific legitimate reasons for doing so. *Id*. In other words, while the ALJ is free to reject testimony, he must provide sufficiently specific explanations for discounting or disregarding a treating physician's opinion so that subsequent reviewers can ascertain the weight given to the treating physician's medical opinions and the reason for that weight. *Id.* "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *McGoffin v. Barnhart*, 288 F.3d 1248 (10th 2002) (citing *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir.2000) (internal quotations omitted)).

     *Dr. Walter Winslow*.

Dr. Winslow treated the Plaintiff from February 2003 to August 2004 and from April 2005 to April 2006. On October 31, 2005, Dr. Winslow found that Plaintiff had moderate limitations in activities of daily living, moderate difficulties in maintaining social functioning, marked limitations in concentration, persistence and pace and three episodes of decompensation. Tr. 271. In

discounting Dr. Winslow's opinion that Plaintiff had marked limitations in concentration, the ALJ wrote:

> Dr. Winslow dated the claimant's problems to 1996 when she lost a job as a motel manager. However, the claimant continued to work and earned SGA-level wages for six years after that occurrence. The doctor did note that the claimant might be able to return to the work force with vocational assistance and continued treatment for depression and alcoholism. In all the claimant's sessions with Dr. Winslow, the only mention of concentration difficulties was in April 2006 when he refilled her Antabuse prescription.

Tr. 21.

Plaintiff did indeed continue to work. She said she had twenty jobs in twenty years. Tr. 271. A review of Dr. Winslow records show that she continued to try to work and worked at the Muscular Dystrophy Association, at St. Martin's in the kitchen part time, at Sears, and she volunteered at the Albuquerque Drop in Center for a stipend. Tr. 255, 256, 259, 299. However, these were not jobs she kept for any length of time. Plaintiff testified she kept her job at Sears for only 6 weeks and was fired because she was slow. Tr. 476-77. The fact that on one occasion Dr. Winslow wrote Plaintiff may be able to return to the work force with vocational assistance and continued treatment for depression and alcoholism is not a sufficient reason to disregard his opinion regarding Plaintiff's limitations. Finally, Plaintiff went to see Dr. Winslow for medication management. His records reflect so. Plaintiff's limitations are not outlined in his medical records. However, facts in those records support Dr. Winslow's opinion that Plaintiff has marked limitations in concentration, persistence or pace. She had many jobs; she was fired because she was slow; she attended, sometimes on a daily basis, a Dual Diagnosis counseling program for substance abuse. In addition, Dr. Winslow evaluated Plaintiff's level of functioning on the GAF scale from 48 to 55 indicating she at time had serious limitations in functioning. And most importantly, Dr. Winslow's record demonstrate that Plaintiff was compliant with her medications and scheduled appointments and that

she required continuous medication and counseling. Tr. 254, 257, 259. In addition, included in the records from St. Martin's are notes from treatment plans which state that her strength is that she attends all scheduled appointments and is "med" compliant but continues to experience symptoms of depressions. Tr. 221. 222, 299.

The Defendant asserts that "[when] Plaintiff took the antidepressant medication that Dr. Winslow prescribed, she reported no depressive symptoms." [Doc. 22 at 6.] The Defendant then cited to the ALJ opinion and a Beck Depression Inventory dated June 1, 2005. *Id.*; Tr. 260-62. The Defendant made this assertion even though the record is replete with records showing that even on her medication, Plaintiff suffered depression. Tr. 221, 222, 254, 256-58, 299, 300, 302 and 305. Defendant's assertion is, at best, disingenuous.

> *Dr. Janice Penn.*

Dr. Penn, a psychologist, treated Plaintiff from July of 2004 to April of 2005. On August 12, 2004, Dr. Penn found that Plaintiff had no limitations in her activities of daily living; slight limitations in social functioning, constant limitation on concentration, persistence or pace and continual episodes of decompensation. Tr. 197.

In discounting Dr. Penn's opinion, the ALJ wrote:

> The claimant's one-time treating psychologist, Dr. Janice Penn, also filled out a mental impairment questionnaire in August 2004. The Claimant was treated briefly by Dr. Penn and was apparently diagnosed as having bipolar affective disorder by that doctor. None of the claimant's other treating mental health care professionals endorsed such a diagnosis and Dr. Winslow repeatedly refutes that diagnosis in treatment notes....Again, Dr. Penn's treatment notes do not support the finding of constant difficulties in concentration or continual episodes of decompensation. The treatment notes of September 2004 indicate that the claimant is in school and adjusting well to her medications.

Tr. 22.

12

Dr. Penn's treatment notes show that she saw Plaintiff on at least five occasions. Tr. 151-200. Dr. Penn's treatment notes also state that when the Plaintiff first saw Dr. Penn she was "having difficulty with coping with stress" and had relapsed. Tr. 158, 171. At this time she was receiving counseling from First Stepping Stones at Healthcare for the Homeless. Tr. 171. Dr. Penn opined that Plaintiff's current GAF on August 12, 2004, was 35 and her highest GAF in the last year was 30. Tr. 193. Dr. Penn did note improvement. However, treatment notes do not demonstrate that Plaintiff did not have any limitations due to her depression. The fact that Dr. Penn diagnosed Plaintiff with bipolar disorder rather than depressive disorder is of little consequence in the analysis of her mental health limitations. Bipolar disorder as well as depression is an affective disorder under the regulations and the B and C criteria are the same. 20 C.F.R. Pt. 404, Subpt. P. App. 1 §12.04.

*Dr. Claire Smith.*

Dr. Smith, a psychiatrist at the Counseling and Psychotherapy Institute, treated Plaintiff from November 2006 to December of 2006. In a report dated January 3, 2007, she found that Plaintiff had marked limitations in activities of daily living; extreme limitations in social functioning, "n/a" as to Plaintiff's concentration, persistence and pace; and four or more episodes of decompensation.

In discounting Dr. Smith's opinion the ALJ wrote:

> As noted above, at the time the doctor prepared the questionnaire, she had been the claimant's treating psychiatrist for about two months and had seen her for three appointment. At one office visit, the claimant admitted non-compliance with her medication. In October 2006, a case manager for the claimant's therapy provider rated the claimant's GAF at 78. The treatment notes and brief doctor-patient relationship contradict Dr. Smith's assertions of marked and extreme limitations.

Tr. 22.

The ALJ states that because of the brief doctor-patient relationship, Dr. Smith cannot opine that Plaintiff's limitations are marked and extreme. This is not logical. In addition, the treatment notes not mentioned by the ALJ support Dr. Smith's opinion. While under the care of Dr. Smith, Plaintiff lost custody of her ten year old son and expressed a "desire to die." Tr. 310. In addition, the ALJ failed to note that the case worker who rated Plaintiff's GAF at 78 also found that Plaintiff had marked limitations on January 17, 2007. Tr. 201-202. Specifically, the caseworker found that Plaintiff had marked impairment in the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; in her ability to complete a normal work-day and work-week without interruptions from psychologically based symptoms; and in her ability to perform at a consistent pace without an unreasonable number and length of rest periods. It is error for the ALJ not to resolve this inconsistency. In addition, the ALJ failed to explain her reliance on a GAF 78 from a case worker when there is no support in the record that she ever functioned at that level on the GAF scale. In addition, the Court notes that an opinion of a caseworker is not an acceptable medical source under the regulations. 20 C.F.R. §§ 404.1513(a), 416.913(a). Finally, citing to one instance of non-compliance in taking medication does not discount the physician's opinion.

The Court finds that the ALJ failed to give "specific, legitimate reasons" for disregarding the opinions of Plaintiff's treating physicians and that his decision is not supported by the substantial evidence.

<u>Other errors</u>.

In addition, the ALJ did not refer to Dr. Paula Hensley's treatment notes. The Court is aware that Dr. Hensley did not give an opinion as to Plaintiff's disability. However, she did make specific medical findings. Tr. 320-356.

14

The ALJ also erred in making a medical judgment. In his opinion, the ALJ stated the following:

> The pattern that emerges from the records submitted is that the claimant relapses from sobriety resulting in suicidal ideation/gestures and has very low functioning at admission and does much better when she is detoxified. The claimant's depression, in and of itself, has not resulted in episodes of decompensation.

Tr. 19.

This statement is a medical judgment that the ALJ is not qualified to make. *Winfrey v. Chater,* 92 F.3d 1017, 1021-22 (10th Cir. 1996) (the ALJ is not entitled to reject a doctor's opinion without adequate justification or to substitute his own medical judgment for that of mental health professionals).

Finally, the ALJ cannot simply ignore the GAF evidence. *Simien v. Astrue*, 2007 WL 1847205, at 2* (10th Cir. 2007) (finding that the ALJ erred in ignoring the claimant's GAF scores that ranged from 30 to 50). "A GAF score of fifty or less, however, does suggest an inability to keep a job." *Lee*, 2004 WL 2810224, at *3 (10th Cir. 2004).

<u>Award of benefits</u>.

Plaintiff asks the Court to remand for a payment of benefits. Whether to award benefits is a matter within the Court's discretion. *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). The relevant factors to consider include the length of time the matter has been pending and whether or not "given the available evidence, remand for additional fact-finding would serve [any] useful purpose but would merely delay the receipt of benefits." *Salazar,* 468 F.3d at 626 (citation omitted).

Three of Plaintiff's treating physicians have stated that Plaintiff meets the B criteria for the Listing, Affective Disorders. The only contrary evidence in the record is the State agency physician. The substantial evidence in the record is that Plaintiff is disabled. However, due to Plaintiff's

alcoholism, the Court will remand to the Defendant to determine whether her alcoholism is a contributing factor material to the determination of disability. 20 C.F.R. § 416.935.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Decision is granted for proceedings consistent with this memorandum opinion.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE,**
**PRESIDING**